UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROSEMARY BRIM DAVIS,

    Plaintiff,

    v.

HOMECOMINGS FINANCIAL,

    Defendant.

Case No. C05-1466RSL

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

    This matter comes before the Court on a motion for summary judgment filed by defendant Homecomings Financial Network, Inc. ("Homecomings"). (Dkt. #30). Plaintiff Rosemary Brim Davis, who is suing on behalf of herself and all others similarly situated, alleges that Homecomings charged her a $25 "Expedite Fee" not authorized by her loan documents when she paid off her loan in 2004. At the request of the parties, the Court heard oral argument in this matter on September 11, 2006.

    For the reasons set forth below, the Court grants the motion in part and denies it in part.

**I. FACTS**

    The following facts are either undisputed or, where a dispute exists, it is resolved

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 1

in plaintiff's favor. In 1999, Davis obtained a residential mortgage loan from OnCall Mortgage a/k/a Crossland Mortgage Corporation. Shortly thereafter, Homecomings assumed responsibility for servicing the loan, and Davis was directed to make all further payments to Homecomings.

The loan was secured by a deed of trust that provided as follows:

> **22. Reconveyance**. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Agreement to the Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

Declaration of Rosemary Tureaud[1] (Dkt. #36) ("Davis Decl."), Ex. A ("Deed of Trust") at ¶ 22. In 2000, Davis considered refinancing her loan and retained Key West Escrow, Inc. ("Key West") to assist her in doing so. Davis signed a General Authorization form authorizing Key West "to make any necessary inquiries regarding [her] financial affairs having to do with the necessity of closing [her] refinance of [her] property." Declaration of Dustin Pickens (Dkt. #31) ("Pickens Decl."), Ex. F. Key West contacted Homecomings to ascertain the amount to pay off the loan. On August 9, 2000, per Key West's request, Homecomings faxed a Payoff Statement to Key West (the "2000 Payoff Statement"). Pickens Decl., Ex. G.

Homecomings does not provide verbal loan payoff quotes to borrowers. Homecomings' Interactive Voice Response telephone system ("IVR") permits borrowers, or third parties with the borrower's loan number or Social Security Number, to order a Payoff Statement by calling and keying in information in response to voice prompts.

---

[1] Davis has recently changed her last name to Tureaud. For consistency and to avoid confusion, the Court will refer to her as Davis as the parties do.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 2

1  Homecomings states that in 2000, the IVR system informed callers that a Payoff
2  Statement would be mailed to the borrower's home address for free or faxed for an
3  "Expedite Fee." The IVR system would not allow third parties, like escrow agents, to
4  request that Homecomings mail a statement directly to them rather than to the borrower.
5      Davis signed the bottom of the 2000 Payoff Statement, which included a $25
6  Expedite Fee. She did not question or protest the Expedite Fee. Davis "paid no
7  attention" to the Expedite Fee "because [she] was looking at the big figures, not the little
8  ones." Davis Dep. at p. 104. Davis ultimately decided not to refinance the loan because
9  she would have had to pay a prepayment penalty.
10     In 2004, Davis again considered refinancing the loan and retained The Talon
11 Group to act as the escrow manager. The Talon Group requested a payoff amount on
12 Davis' loan, and Homecomings faxed a Payoff Statement (the "2004 Payoff Statement")
13 to The Talon Group. The 2004 Payoff Statement included the following:

```
CURRENT LOAN INFORMATION:
Principal                                              $234,130.95
Interest Thru                                          $  1,699.08
Escrow Advance                                         $       .00
Unpaid Late Charges                                    $       .00
Corporate Advance                                      $       .00
Prepayment Penalty                                     $       .00
                                                       _____
Amount to Satisfy Loan Obligation                      $235,830.03
Fee to expedite stmt - prior request (1) (1 @ $25.00)     $25.00
Recording Fee      - prior                                $16.00
                                                       _____
       Total as of June 25, 2004                       $235,871.03
```

21 Pickens Decl., Ex. K.
22     As with the 2000 Payoff Statement, Davis did not question or protest the Expedite
23 Fee. Davis Dep. at p. 146 ("I didn't pay any attention to it because I looked at the larger
24 figure and that was it"). Instead, she initialed the statement and paid it in full.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 3

The $25 Expedite Fee that appeared on the 2004 Payoff Statement was for the same fee that appeared on the 2000 Payoff Statement. Davis was not charged a second Expedite Fee in 2004 because Homecomings ceased charging Washington borrowers the Expedite Fee for faxed statements in January 2004. When Davis paid off her loan, she paid Homecomings $235,871.03, the "Total as of June 25, 2004" that appeared on the 2004 Payoff Statement.

On July 25, 2005, Davis filed her complaint in King County Superior Court on behalf of herself and all others similarly situated. Homecomings removed the case to this Court on August 24, 2005 pursuant to the Class Action Fairness Act of 2005. Davis alleges claims for breach of contract, unjust enrichment, and a violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86 *et seq.* Plaintiff has also filed a motion for class certification.

## II.  DISCUSSION

**A.     Summary Judgment Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**B.     Breach of Contract Claim.**

Plaintiff argues that Homecomings breached the contract–her Deed of Trust–in

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 4

two ways. First, she contends that the Deed of Trust did not authorize Homecomings to charge her a fee to obtain a faxed Payoff Statement. Davis argues that because the Deed of Trust specifies what fees may be charged, it precludes charging non-enumerated fees pursuant to the doctrine of *expressio unius est exclusio alterius* (the "mention of one thing excludes the other"). The Deed of Trust, however, does not prohibit Homecomings from charging borrowers for additional services, and faxing a Payoff Statement is an additional service not required by the contract. In Cappellini v. Mellon Mortgage Co., the court rejected a similar claim that the imposition of a fax fee violated the contract, stating,

> It would be difficult for form notes and mortgages that cover long periods to anticipate and include each and every such incidental special request made by a borrower. Here the plaintiff was asking for faxed payoff statements in order to receive refinancing and take advantage of lower interest rates. To say that a borrower can make such requests for his or her own benefit, yet, under a principle such as contra proferentum, never allow the mortgage servicer to charge for the services unless specified in the loan documents would be an unreasonable interpretation of the contract.

991 F. Supp. 31, 39-40 (D. Mass. 1997). Furthermore, Davis could have obtained a Payoff Statement via mail for free, but her authorized agent chose to have it faxed instead. Homecomings' IVR system informed Key West that an Expedite Fee would be charged, and Key West elected to proceed with the request. Accordingly, Homecomings did not breach the contract by charging the Expedite Fee.

Second, plaintiff argues that Homecomings breached the contract by requiring her to pay the Expedite Fee as a condition of releasing her loan. The Deed of Trust requires Homecomings to release the property upon payment of all sums secured by the Deed of Trust and without charge. The Expedite Fee is not a secured amount. Homecomings concedes that it would have violated the terms of the Deed of Trust if it had conditioned release on payment of the Expedite Fee. See Cappellini, 991 F. Supp. at 40-41 (denying

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 5

summary judgment on breach of contract claim in part because the contract "would appear to protect a borrower against a lender using the release of the mortgage as leverage for payment of other fees or charges"). Homecomings argues, however, that it did not impose that condition. Instead, it merely listed the Expedite Fee on the 2004 Payoff Statement, which, in itself, is not a breach of the contract. However, an issue of fact exists regarding whether Homecomings conditioned the release of Davis' property on payment of the fax fee. On one hand, the 2004 Payoff Statement lists "Amount to satisfy note obligation," and the Deed of Trust states that the property will be reconveyed "[u]pon payment of all sums secured by this Security Instrument." The 2004 Payoff Statement does not explicitly state that payment of the Expedite Fee is required to release the loan. On the other hand, the 2004 Payoff Statement was sent in response to an inquiry requesting the amount to pay off the loan. The 2004 Payoff Statement is titled at the top as "Payoff Statement," it includes a "Total as of June 25, 2004," and it states that the lien will be released "[u]pon full payoff." Pickens Decl., Ex. K. Because the document does not define the terms "payoff" or "full payoff," a reasonable consumer could conclude that she was required to pay the "total" amount listed below the title "CURRENT LOAN INFORMATION" before her loan would be released.[2] That implication is heightened by the fact that the 2004 Payoff Statement threatens dire consequences if there is a shortage in "Payoff funds." Id. (stating that Homecomings "will return funds that are insufficient to complete the payoff" without posting the funds

---

[2] In contrast, in an unpublished case cited by Homecomings, the payoff statement listed an "amount to pay loan in full," a "total amount due to lender" that included a fax fee, and did not include language requiring payment of an ambiguous "payoff amount" in full. Horowitz v. PNC Mortgage Corp. of Am., No. 1-00-0438 (Ill. App. Ct. May 6, 2002) (granting defendant's motion for summary judgment).

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 6

or calling the borrower).  Accordingly, a reasonable jury could find that the 2004 Payoff Statement was structured and phrased to require payment of the full total amount before Homecomings would release the loan.

Despite the implications in the 2004 Payoff Statement, Homecomings argues that it did not breach the contract because it has a policy of releasing security instruments upon payment of only the secured sums, and it has a "tolerance" policy of releasing loans if the unpaid amount is less than $50.00.  Neither of those policies, however, was communicated to borrowers, and there is no evidence that Davis was aware of them.  See Cappellini, 991 F. Supp. at 40.  Homecomings also argues that it did not charge Davis the Expedite Fee when she paid off her loan in 2004; it charged the fee in 2000 for faxing the 2000 Payoff Statement.  The fact that Davis incurred the fee in 2000 but Homecomings did not require her to pay it until she paid off her loan actually supports plaintiff's argument.  Similarly, if Davis felt compelled to pay the Expedite Fee to release her loan, then Homecomings cannot escape liability by relying on the voluntary payment doctrine.[3]

Finally, Homecomings argues that Davis cannot establish that she suffered any damages proximately caused by the breach of the Deed of Trust because she was contractually obligated to pay the $25 Expedite Fee.  In Washington, there must be a meeting of the minds on all essential terms to form a contract.  See, e.g., Swanson v.

---

[3] Pursuant to the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance."  See, e.g., Hawkinson v. Conniff, 53 Wn.2d 454, 458 (1959) (citing Speckert v. Bunker Hill Arizona Mining Co., 6 Wn.2d 39, 52 (1940)).  Payments are considered involuntarily made under the doctrine if the payor lacked knowledge of the applicable fees or made the payment as a result of fraud, duress, or compulsion.  Speckert, 6 Wn.2d at 52-54.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 7

1  Holmquist, 13 Wn. App. 939, 942 (1975); see also Hansen v. Transworld Wireless TV
2  Spokane, 111 Wn. App. 361, 377 (2002) (explaining that price is an essential term).  In
3  this case, there is conflicting evidence regarding whether the IVR system informed
4  Washington callers in 2000 that the fee was $25.00.  Michael Urban testified in his
5  deposition that the amount of the fee would have been stated, but also stated that he was
6  not sure whether a caller would be told the exact amount of the fee.  Urban Dep. at 88,
7  93; see also Urban Decl. at ¶ 3.  That inconsistency was never explained, so for purposes
8  of this motion, there is an issue of fact regarding whether the amount of the fee was
9  disclosed.  For these reasons, the Court denies summary judgment on plaintiff's breach of
10 contract claim.

**C.    Unjust Enrichment Claim.**

"Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another."  Bailie Comm., Ltd. v. Trend Bus. Sys., Inc., 61 Wn. App. 151, 159 (1991).  To prove unjust enrichment, Davis must show that: (1) she conferred a benefit upon Homecomings, (2) Homecomings had an appreciation or knowledge of the benefit, and (3) Homecomings accepted or retained the benefit under circumstances as to make it inequitable for it to retain the benefit.  Id. at 159-60.  Davis notes that in the related Gerber and Orser cases, the court denied motions to dismiss plaintiffs' unjust enrichment claims.  Gerber v. First Horizon Home Loans Corp., C05-1554 (W.D. Wash. 2005); Orser v. Select Portfolio Servicing, Inc., C05-1507 (W.D. Wash. 2005).  Those rulings, however, were made in the context of 12(b)(6) motions to dismiss, and both defendants argued that plaintiffs' claims were barred based on their breach of contract claims.

Davis also argues that "Homecomings had no right to charge the fee or to retain

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 8

1 it." Plaintiff's Response at p. 18. However, as set forth above, the fact that the Deed of
2 Trust is silent on the issue of the fax fee does not mean that Homecomings is precluded
3 from charging it or that Homecomings was required to provide faxing service to Davis for
4 free. Plaintiff argues that Homecomings would not mail a copy to her escrow company,
5 so it interfered with her right to pay off the loan without incurring the Expedite Fee.
6 Plaintiff, however, could have had the statement sent to her then provided it to the escrow
7 company; she obtained a benefit, convenience, from having it faxed directly to the escrow
8 company. There is nothing inequitable about a company charging a fee for an additional
9 service rendered. Moreover, Homecomings' IVR system informed Key West that a fee
10 would be charged for faxing a Payoff Statement, Key West requested the fax, Davis
11 received the benefit of receiving the statement in an expedited manner, and she has not
12 presented any evidence that the amount of the fee was unreasonable. Under these
13 circumstances, there is no evidence that Homecomings was unjustly enriched.

**D.  Consumer Protection Act Claim.**

To establish a CPA claim, Davis must prove: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) with a public interest impact, (4) an injury to plaintiff in his or her business or property, and (5) a causal relationship between the unfair or deceptive act and the resulting injury. See, e.g., Hangman v. Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn. 2d 778, 780, 784 (1986). The CPA "should be liberally construed [so] that its beneficial purposes may be served." Dwyer v. J.I. Kislak Mortgage Corp., 103 Wn. App. 542, 548 (2000).

Homecomings argues that its inclusion of the Expedite Fee as a separate line-item from the secured amounts was not a deceptive act or practice. A CPA plaintiff is not required to show intent to defraud or deceive, "only that the practice had the capacity to

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 9

1 deceive a substantial portion of the public." Robinson v. Avis Rent A Car Sys., Inc., 106
2 Wn. App. 104, 115 (2001).  As in Dwyer, Davis "requested the statement to learn the
3 sums due to obtain a release of [her] mortgage" and the lender included unsecured fees in
4 the total amount due.  Dwyer, 103 Wn. App. at 547.  As the Dwyer court noted, "It is
5 reasonable to assume that [the lender's] response would include only those charges
6 actually required to release the mortgage, or if other fees appeared, that they would be
7 specifically identified as extraneous charges that need not be paid in order to obtain a
8 release of the prior lien."  Id.  The court in Dwyer found that the defendant's "practice of
9 including 'Misc Service Chgs' along with secured sums due on its mortgage payoff
10 statement 'Balance Due' violate[d] the [CPA]" because it had the capacity to deceive
11 consumers into believing that defendant would not release their loans unless they paid the
12 fees.  Id. at 545.  Similarly, in this case, the 2004 Payoff Statement included the
13 unsecured amount in the total amount due, did not state that payment of the Expedite Fee
14 was not required for release of the loan, and as set forth more fully above, implied that it
15 was required by its phrasing and structure.  Therefore, the 2004 Payoff Statement had the
16 capacity to deceive reasonable consumers.

17 Homecomings also argues that Davis did not suffer any injury because her agent
18 agreed to the Expedite Fee, so she was obligated to pay it in exchange for the additional
19 service she received.  However, as set forth above regarding Davis' breach of contract
20 claim, if there was no valid obligation to pay the Expedite Fee, then she suffered an
21 injury.

22 Finally, Homecomings contends that even if Davis suffered an injury, it was not
23 proximately caused by any allegedly unfair or deceptive act.  See, e.g., Pickett v. Holland
24 Am. Line-Westours, Inc., 145 Wn.2d 178, 196 (2001) (citing with approval Nuttall v.

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 10

Dowell, 31 Wn. App. 98, 111 (1982), which held that a consumer must "convince the trier of fact that he relied upon" a misrepresentation to establish the casual relationship element of a CPA claim).  Homecomings argues that Davis cannot show reliance because she testified during her deposition that she did not read most of the 2004 Payoff Statement.  Instead, she only looked at the total amount.  Davis Dep. at pp. 103-05, 145-47.  However, Davis has stated in a declaration that she "understood that the full $235,871.03, which included the $25.00 Expedite Fee, had to be paid to Homecomings so that the Deed of Trust securing the loan Homecomings was servicing would be reconveyed."  Davis Decl. at ¶ 4.  Certainly, Davis may have a difficult time at trial convincing a jury that she relied on anything in the Payoff Statement when she reviewed it so cursorily.  The Court, however, must evaluate the evidence in the light most favorable to plaintiff on this motion for summary judgment.  Although the issue is a close one, under that standard, plaintiff's statement is sufficient to show reliance for purposes of this motion.  Accordingly, dismissal of the CPA claim is not warranted.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART defendant's motion for summary judgment (Dkt. #30).  Plaintiff's claim for unjust enrichment is dismissed.  The Court denies the motion as to her claims for breach of contract and for a violation of the CPA.

DATED this 10th day of October, 2006.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART MOTION FOR SUMMARY JUDGMENT - 11